**NOTICE**

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180769-U

NO. 4-18-0769

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 25, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Vermilion County |
| MICHAEL J. CONNOR, | ) | No. 16CF242 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed defendant's conviction, finding: (1) the trial court properly admonished defendant pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012); (2) the trial court did not err by refusing to give a jury instruction requested by defendant; and (3) the trial court did not direct the jurors not to ask any questions during their deliberations.

¶ 2   Following a jury trial, defendant, Michael J. Connor, was found guilty of possession of a controlled substance (720 ILCS 570/402(c) (West 2014)). On appeal, defendant argues (1) the trial court's questioning of potential jurors during *voir dire* did not comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) the court erred by refusing to give a jury instruction defining "knowingly," and (3) the court improperly "directed the jurors not to ask any questions during their deliberations." We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On April 15, 2016, the State charged defendant with possession of a controlled substance (720 ILCS 570/402(c) (West 2014)), alleging defendant had "knowingly possessed a substance containing cocaine." The State also charged defendant with criminal trespass to real property (720 ILCS 5/21-3(a)(1) (West 2014)), but that charge was later dismissed.

¶ 5        The cause proceeded to a jury trial in August 2018. During *voir dire*, the trial court divided the venire into two 14-person panels. The court then addressed the first panel of prospective jurors as follows:

> "A person accused of a crime is presumed to be innocent of the charges against him. That presumption of innocence stays with the defendant throughout the trial and is not overcome unless from all the evidence you believe the State proved his guilt beyond a reasonable doubt. The State has the burden of proving the defendant's guilty beyond a reasonable doubt."

The court then asked each prospective juror individually whether he or she "underst[oo]d and accept[ed] those principles" and then continued:

> "The defendant does not have to prove his innocence. The defendant does not have to present any evidence on his own behalf. The defendant does not have to testify if he does not wish to. If the defendant does not testify[,] this cannot be considered by you in any way in arriving at your verdict. If the defendant does testify[,] you should judge his testimony in the same manner as you would judge the testimony of any other witness."

The court again asked each prospective juror whether he or she "underst[ood] and accept[ed] those principles." The court repeated these instructions verbatim to the second panel of potential jurors and asked each prospective juror in that panel whether he or she understood and accepted the

principles. All of the potential jurors (except for one juror who was later stricken for cause) indicated they understood and accepted the principles. Defendant did not object to the court's questioning of the potential jurors.

¶ 6          During its case-in-chief, the State called Officer Joshua Edington of the Danville Police Department. Officer Edington testified that, on April 14, 2016, at approximately 11:30 p.m., he responded to a "disturbance complaint" at the home of William Westphal. When Officer Edington arrived, he "observed a male[,] white subject seemingly roaming around the backyard fenced in area" of the Westphal residence. Officer Edington identified defendant as the man he observed and testified, when he first saw defendant that evening, he was "bleeding from the mouth and the hand" and was "rather incoherent, stumbling around, wasn't making a lot of sense of what he said." Eventually, Officer Edington arrested defendant and performed a search incident to arrest. During the search, Officer Edington "found a small[,] off-white, rock-like substance in [defendant's] right front pants pocket" which field tested positive for cocaine. On cross-examination, Officer Edington clarified the substance "was not in a plastic baggy" but was "just in [defendant's] pocket."

¶ 7          The State also presented testimony of Maureen Bommarito, a forensic chemist with the Illinois State Police forensics crime lab, who analyzed the substance Officer Edington found in defendant's pocket and determined it was "0.1 grams of cocaine." The State then rested. Defendant presented no evidence.

¶ 8          After the presentation of evidence, the trial court excused the jurors and conducted a jury instruction conference. During the jury instruction conference, defense counsel requested the court give the jury Illinois Pattern Jury Instruction, Criminal, No. 5.01B (approved Oct. 28, 2016) (hereinafter IPI Criminal No. 5.01B), defining the term "knowingly," and the State objected.

In support of the instruction, defense counsel argued, "[k]knowledge is what's at issue here by and large, I think it's an appropriate instruction." The State responded that the committee notes in the instruction indicated "the word[ ] *** knowingly ha[s] a plain meaning within the jury's common understanding" and argued the instruction did not "help[ ] a common understanding of *** knowingly and it frankly makes it more confusing." The court ultimately refused to give the instruction.

¶ 9        After the jury instruction conference, the parties presented their closing arguments. During defense counsel's argument, he stated "[t]his is a case about knowledge and despite what the State wants you to believe[,] you haven't heard anything that shows that [defendant] knew that he had cocaine in his pocket." Defense counsel argued the State had presented no "evidence about how [the cocaine] got in" defendant's pocket and, because defendant was "bleeding from the face," "bleeding from the hand," and "incoherent," he would not necessarily have known he had a small amount of cocaine "loose in his pocket."

¶ 10        After closing arguments, the trial court read the approved instructions to the jury, including the instruction that, "[a] person commits the offense of [p]ossession of a [c]ontrolled [s]ubstance when he knowingly possesses a substance containing a controlled substance." Before excusing the jury to begin deliberations, the court also instructed the jury:

>  "[Y]ou are in the care of Greg[,] who is my bailiff. Greg has been instructed by this [c]ourt not to permit any person to speak or to otherwise communicate with you on any subject connected with the case—the trial except with the permission of the [c]ourt. I am directing Greg not to communicate with you on any subject concerned with the trial and I direct you not to ask him any questions pertaining thereto. When you have reached a verdict[,] notify Greg who will then inform the [c]ourt."

¶ 11 The jury found defendant guilty of possession of a controlled substance. Defendant subsequently filed a motion for a new trial, which the trial court denied. The court sentenced defendant to 24 months' conditional discharge.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 On appeal, defendant argues: (1) the trial court's questioning of potential jurors during *voir dire* did not comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) the court erred by refusing to give a jury instruction defining "knowingly," and (3) the court improperly "directed the jurors not to ask any questions during their deliberations."

¶ 15 A. *Voir Dire* Admonishments

¶ 16 Defendant first argues the trial court's questioning of potential jurors during *voir dire* did not comply with Rule 431(b). Defendant acknowledges he has forfeited this issue for review by failing to raise it during trial and in a posttrial motion. See *People v. Belknap*, 2014 IL 117094, ¶ 66, 23 N.E.3d 325 ("To preserve an alleged error for review, a defendant must both make an objection at trial and include the issue in a posttrial motion."). However, he argues the issue should be addressed pursuant to the plain-error doctrine. We review *de novo* the question of whether a forfeited claim is reviewable as plain error. *People v. Johnson*, 238 Ill. 2d 478, 485, 939 N.E.2d 475, 480 (2010).

¶ 17 "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010). "To obtain relief under [the plain-error doctrine], a defendant must first show that a clear or obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). After showing the existence of clear or obvious error, a

defendant must then show either: (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) the error "is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007). Whether the plain error doctrine applies in the present case first depends upon whether the trial court erred in admonishing the jury pursuant to Rule 431(b). See *Thompson*, 238 Ill. 2d at 613 ("The first step of plain-error review is determining whether any error occurred.").

¶ 18        Rule 431(b) requires the trial court to ask each potential juror whether he or she "understands" and "accepts" that (1) the defendant is presumed innocent, (2) the State bears the burden of proving the defendant guilty beyond a reasonable doubt, (3) the defendant has no obligation to present evidence, and (4) the defendant's choice to not testify cannot be held against him. Rule 431(b) "mandates a specific question and response process," requiring the trial court to "ask each potential juror whether he or she understands and accepts each of the principles in the rule." *Thompson*, 238 Ill. 2d at 607.

¶ 19        In the present case, defendant contends the trial court "short-circuited the required inquiry by combining the four essential, yet separate, principles of Rule 431(b) into two broad statements" which "undermined any confidence that the jurors actually understood and accepted each principle listed in Rule 431(b)." The State disagrees, noting this court previously rejected a similar argument in *People v. Kinnerson*, 2020 IL App (4th) 170650. We agree with the State and find *Kinnerson* dispositive.

¶ 20        In *Kinnerson*, the trial court instructed the potential jurors during *voir dire* regarding "general propositions of law." (Internal quotation marks omitted.) *Id.* ¶ 5. Specifically,

- 6 -

the trial court instructed the potential jurors:

> "First of all, the defendant in this case *** is presumed to be innocent of each of the charges that have been brought against him. This presumption of innocence remains with the defendant throughout every stage of the trial and during the jury's deliberations on the verdict. Before any defendant can be convicted, the State must prove the defendant guilty beyond a reasonable doubt.
>
> The State has this burden of proving the guilt beyond a reasonable doubt, and the burden remains on the State throughout the entire case. The defendant is not required to offer any evidence whatsoever during the trial or to prove his innocence.
>
> If the defendant should choose not to testify during the trial, the defendant's choice not to testify cannot be held against him in any way in arriving at your verdict." (Internal quotation marks omitted.) *Id.*

The court then "questioned the potential jurors 'row by row,' in groups of six or eight, asking 'do each of you *** understand and accept these basic propositions of law' " and noted it "received 'all affirmative responses and no hands raised.' " *Id.* The defendant was ultimately found guilty. *Id.* ¶ 23.

¶ 21      On appeal, the defendant in *Kinnerson* argued "the trial court was required to address each Rule 431(b) principle separately and erred by combining the four principles into a single statement on the law." (Internal quotation marks omitted.) *Id.* ¶ 60. We rejected the defendant's argument, finding neither Rule 431(b) nor our supreme court's precedent "require[ed] a process wherein the court addresses each principle separately." (Internal quotation marks omitted.) *Id.* ¶ 62. We concluded the trial court's Rule 431(b) instructions were proper because the

court "admonished all jurors regarding each *** principle[,]" *** immediately questioned those jurors in smaller groups to determine both their understanding and acceptance of each principle[,]" and "provided the opportunity for each juror to respond." *Id.*

¶ 22     As in *Kinnerson*, in the present case, the trial court did not ask each potential juror whether he or she understood and accepted each Rule 431(b) principle immediately after the court stated the principle. Instead, the court stated the first and second principle, asked each individual juror whether he or she understood and accepted the principles, and provided each juror the opportunity to respond. The court then stated the third and fourth principle, asked each individual juror whether he or she understood and accepted the principles, and provided each juror the opportunity to respond. Applying *Kinnerson*, we find no error in the trial court's questioning of the potential jurors. Accordingly, the plain-error doctrine does not apply, and defendant's claim is forfeited.

¶ 23                         B. Jury Instructions

¶ 24     Defendant next contends the trial court erred by refusing to give a jury instruction defining "knowingly." "In general, whether the trial court erred in refusing a particular jury instruction is reviewed under an abuse of discretion standard." *People v. Nere*, 2018 IL 122566, ¶ 29, 115 N.E.3d 205.

¶ 25     As a preliminary matter, we note defendant has failed to include the requested jury instruction in the record on appeal. In reviewing the report of proceedings, it appears defendant tendered Defendant's Instruction Number 3 which was a version of IPI Criminal No. 5.01B relating to "knowledge." However, IPI Criminal No. 5.01B itself sets forth several bracketed options depending on the particular circumstances of the case, and the colloquy between the court and counsel during the instructions conference does not reveal the actual wording of defendant's

tendered instruction. Where, as here, a refused jury instruction is not made part of the record on appeal and the record and report of proceedings do not adequately inform the reviewing court of the instruction's substance, a claim that the court's refusal to give the instruction was error is typically forfeited. *People v. Emerson*, 189 Ill. 2d 436, 503-504, 727 N.E.2d 302, 339 (2000). Forfeiture aside, and considering the merits of defendant's argument, we find the court did not err in refusing to give the requested instruction.

¶ 26 Reviewing courts have long held that, absent a specific question from the jury, "a jury need not be instructed on the term 'knowingly' because it has a plain meaning within the jury's common knowledge." *People v. Sandy*, 188 Ill. App. 3d 833, 842, 544 N.E.2d 1248, 1253 (1989); see *People v. Sanders*, 368 Ill. App. 3d 533, 537, 857 N.E.2d 948, 952 (2006); see also *People v. Powell*, 159 Ill. App. 3d 1005, 1013, 512 N.E.2d 1364, 1370 (1987). Nonetheless, defendant, argues the court here was required to give a jury instruction defining the term. In support, defendant argues *People v. Jones*, 175 Ill. 2d 126, 676 N.E.2d 646 (1997) is instructive as it "addressed a similarly denied instruction."

¶ 27 In *Jones*, the defendant argued on appeal that the trial court erred by refusing to instruct the jury on an affirmative defense pleaded by the defendant. *Id.* at 131. On review, our supreme court stated, "[a] defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence, and if there is such evidence, it is an abuse of discretion for the trial court to refuse to so instruct the jury." *Id.* at 131-32. The court continued, "[v]ery slight evidence upon a given theory of a case will justify the giving of an instruction." *Id.* at 132. Based on its review of the evidence presented by the State, the court concluded the evidence was sufficient to entitle the defendant to an affirmative defense instruction. *Id.* at 133. The court ultimately reversed the defendant's conviction, finding that, because the trial court failed to instruct

the jury on the defendant's affirmative defense, the jury "lacked the necessary tools to analyze the evidence fully and to reach a verdict based on those facts." *Id.* at 134.

¶ 28 The present case is readily distinguishable from *Jones*. Unlike in *Jones*, here, the jury instruction defendant claims should have been given dealt not with an affirmative defense, but whether the State had proved an element of the offense. Defendant argued the State did not prove he "*knowingly* possess[ed] a substance containing a controlled substance," a crucial element proof. Clearly, the jury *was* instructed that, to find defendant guilty, they were required to find he possessed a controlled substance "knowingly." Because the definition of "knowingly" was within the jury's common knowledge, no further jury instruction was necessary. Thus, we find no abuse of discretion by the court.

¶ 29                                    C. Jury Questions

¶ 30 Defendant's final contention on appeal is that the court improperly "directed the jurors not to ask any questions during their deliberations." Defendant again acknowledges he has forfeited this issue by failing to raise it during trial and in a posttrial motion (see *Belknap*, 2014 IL 117094, ¶ 66) and requests we review the claim pursuant to the plain-error doctrine. We find this issue forfeited because the trial court committed no error.

¶ 31 Generally, "the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *People v. Childs*, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534, 539 (1994). The court's duty applies "even though the jury was properly instructed originally." *Id.* at 229. The court's "failure to answer or the giving of a response which provides no answer to the particular question of law posed has been held to be prejudicial error." *Id.*

¶ 32 Defendant points to the following instructions given by the trial court before the

jury began its deliberations:

> "[Y]ou are in the care of Greg[,] who is my bailiff. Greg has been instructed by this [c]ourt not to permit any person to speak or to otherwise communicate with you on any subject connected with the case—the trial except with the permission of the [c]ourt. I am directing Greg not to communicate with you on any subject concerned with the trial *and I direct you not to ask him any questions pertaining thereto*." (Emphasis added.)

Defendant argues the last sentence in the court's instruction "indicated [the court] would not allow questions from the jury under any circumstances." The State responds, asserting defendant has misinterpreted the court's admonition and that "[t]he plain meaning of this statement was that the jurors were not to ask the bailiff any questions pertaining to the trial." We agree with the State. The court's statement cannot reasonably be interpreted to mean the jury was prohibited from directing the bailiff to convey any questions to the court. Instead, the only reasonable interpretation of the statement is that the jury was prohibited from asking the bailiff any questions about the case. Accordingly, we find the court did not improperly instruct the jury not to ask questions during their deliberations.

¶ 33                                    III. CONCLUSION

¶ 34        For the reasons stated, we affirm the trial court's judgment.

¶ 35        Affirmed.